No. 24-5185

IN THE

# United States Court of Appeals for the Sixth Circuit

---

INNOVATIVE WATER CARE, LLC,

*Plaintiff-Appellee,*

v.

OLIN CORPORATION,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for
the Eastern District of Tennessee, No. 1:24-cv-00068
Honorable Travis R. McDonough

---

**DEFENDANT-APPELLANT'S REPLY
IN SUPPORT OF A MOTION FOR
EXPEDITED BRIEFING AND ARGUMENT**

As IWC does not dispute, this Court's rules contemplate "[e]xpedited [b]riefing" in "appeals from orders denying or granting preliminary injunctions." 6 Cir. R. 32(c)(2)(A). For good reason. By their nature, preliminary injunctions restrict the parties' ability to run their businesses and structure their own affairs based on only a tentative view

of their respective rights. That is especially true here, where the district court *rejected* IWC's argument on the likelihood-of-success on the merits and yet it entered an injunction based on legal theories that IWC did not assert and facts that the court acknowledged were not proven, only (in its view) "fair to assume." (Memorandum Opinion, R. 29, Page ID # 963). IWC offers no sound defense of that decision and no reason not to follow the Court's general approach by expediting this appeal.

1.    IWC claims that Olin is not being forced to process IWC's wastewater during the pendency of the preliminary injunction. (Opp. 2). But the district court's opinion itself refutes that assertion. Under the "status quo" that the district court sought to maintain, "IWC uses Olin's effluent-discharge system to service IWC's manufacturing-process drainage." (Memorandum Opinion, R. 29, Page ID # 952). That is, it "discharges its waste into Olin's pipes." (Memorandum Opinion, R. 29, Page ID # 952). "This waste travels through the effluent-discharge system"—i.e., *Olin*'s effluent-discharge system—"where it comingles with Olin's waste until it reaches one of *Olin's* four retention ponds." (Memorandum Opinion, R. 29, Page ID # 952) (emphasis added). And

"[f]rom there it is treated, and resulting liquid is discharged into the river." (Memorandum Opinion, R. 29, Page ID # 953).

This treatment of the "commingled" waste of Olin and IWC that occurs in Olin's ponds on Olin's property to comply with Olin's NPDES permit is—and legally must be—performed by Olin. (*See* Hearing on Mot. for Prelim Inj. Tr., R. 33, Page ID ## 1228-1229 (Testimony of Christopher Tyree) (explaining that "right now" Olin is treating the wastewater in its ponds before the water is discharged into the Hiwassee River," including IWC's discharge, consistent with Olin's NPDES permit); Hearing on Mot. for Prelim Inj. Tr., R. 33, Page ID ## 1032-1034 (Testimony of Michael Riedel) (acknowledging that the effluent-discharge system provides for the "treat[ment]" of IWC's wastewater, that IWC's and Olin's wastewater streams "commingle" and that, under the current permit, Olin is "compelled" to discharge IWC's and Olin's treated wastewater at the same point into the river). Contrary to IWC's contention, the Environmental Service Agreement is not limited "to monitor[ing] and measur[ing] … the wastewater discharged via Olin's pipes into the Hiwassee River," (Opp. 2), but provides for that essential component of Olin's effluent-discharge system. (*See* Compl. Exh. A, R. 1-

3

3, Page ID # 69 ("These Services include, *but are not limited to, operation of the Site ponds*[.]") (emphasis added).

By prohibiting Olin from "interfering with IWC's perpetual use of the Effluent Discharge Easement," "amending the NPDES Permit in any way that renders the Effluent Discharge Easement obsolete," or "installing and using [a] new effluent discharge piping system without providing IWC access to another suitable effluent-discharge system at Olin's expense," the injunction requires Olin to continue treating that commingled waste. (Memorandum Opinion, R. 29, Page ID # 969). The district court did not find to the contrary. Rather, although the court incorrectly reasoned that IWC's asserted harms outweighed the potential that Olin would violate the amended NPDES permit it has applied for, the court recognized that its injunction would "require[ Olin] to handle IWC's wastewater." (Memorandum Opinion, R. 29, Page ID # 967; *see* Memorandum Opinion, R. 29, Page ID # 967 n.6).

2.　　IWC argues that Olin has not shown good cause for expedition because, in IWC's view, Olin has not demonstrated a likelihood of success on appeal. (Opp. 3-6). Even setting aside the merits, however, Olin has shown good cause for expedition based on this Court's own rules and the

practical effect of the injunction itself. (*See* Mot. 4-5.) IWC fails to acknowledge the Court's rules and, as explained, its response to the practical effects of the injunction is refuted by the record and the decision below. This is not a case like *Fouts v. Warren City Council*, No. 23-1826, 2023 WL 6467366, at *3 (6th Cir. Oct. 4, 2023), where the movant is requesting such "extreme relief" that any further showing is required. *See id.* at *2 (declining to expedite an appeal of dismissal where the plaintiff-movant "unreasonably delayed bringing his claim" and asked the Court to "order a special election for the Warren mayoral race," effectively "nullify[ing] the votes of the Warren citizens" in an earlier primary election).

In any event, there can be no question that the district court granted relief here on the basis of legal theories that IWC did not plead or assert in the court below. In the district court, IWC argued that "the Quitclaim Deed grants IWC the perpetual right to use Olin's eff[]luent discharge system." (Mot. for Prelim. Inj., R. 8, Page ID # 128 (capitalization altered)). That easement, IWC insisted, was "an express easement" that Olin could not extinguish by terminating the Environment Services Agreement—which everyone agreed Olin had

permissibly done. (Mot. for Prelim. Inj., R. 8, Page ID # 137). Nowhere in IWC's briefing did it even mention—let alone argue—the distinct legal theories of "easement by implication or estoppel … a license, or [any] other source." (Opp. 5). And yet the district court concluded that "the Quitclaim Deed does not grant IWC an express easement over Olin's pipes" and, instead, rested the injunction on its conclusion that IWC is likely to establish the "irrevocable right" to use Olin's effluent-discharge system under one of those unargued theories—"an easement appurtenant by implication, an easement appurtenant by estoppel, or an irrevocable license." (Memorandum Opinion, R. 29, Page ID # 960). That conclusion was both procedurally and substantively incorrect, and it further supports Olin's request for expedition here.

  3. Finally, IWC confusingly claims that expediting briefing and argument would interfere with this Court's mediation of the case. Opp. 6-7. IWC provides no authority for its assertion that the Court should depart from its general practice of expediting preliminary-injunction appeals based on the mere selection of a case for potential mediation. *Cf.* 6 Cir. R. 33(b)(4)(A) (providing that the "clerk, at the direction of the mediator, may enter orders controlling the course of proceedings").

Particularly in an appeal like this one, which may turn, in large part, on legal theories not briefed below, there is no basis to conclude that allowing briefing to proceed on an expedited basis is likely to undermine mediation efforts. To the contrary, the parties' further understanding of the strengths and weaknesses of those legal theories is much more likely to inform and aid settlement discussion than to impede them.

For these reasons, Olin respectfully requests this Court to enter an order expediting the briefing schedule and to schedule argument at the Court's earliest convenience.

| | |
|---|---|
| Dated: March 15, 2024 | Respectfully submitted, |
| | */s/ Jonathan Y. Ellis*<br>Jonathan Y. Ellis<br>MCGUIREWOODS LLP<br>501 Fayetteville St.<br>Suite 500<br>Raleigh, NC 27601<br>(919) 755-6600<br>jellis@mcguirewoods.com |
| | *Counsel for Appellant* |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1,160 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

I further certify that this reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Century Schoolbook, 14-point font.

Dated: March 15, 2024                  */s/ Jonathan Y. Ellis*
                                        Jonathan Y. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I electronically filed the foregoing reply brief with the Clerk of the Court using the appellate CM/ECF system, which will also serve counsel of record.

Dated: March 15, 2024 */s/ Jonathan Y. Ellis*
Jonathan Y. Ellis